UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Shelita Cobb, individually,<br>and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Anthem, Inc. and The Anthem Companies, Inc.,<br><br>Defendants. | Case No. 3:19-cv-897 |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Shelita Cobb, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendants, Anthem, Inc. and The Anthem Companies, Inc., and states as follows:

**INTRODUCTION**

1. Plaintiff, Shelita Cobb (hereinafter referred to as "Plaintiff"), brings this collective action pursuant to 29 U.S.C. § 216(b) individually and on behalf of all similarly situated persons employed by Defendants, Anthem, Inc. and The Anthem Companies, Inc. (hereinafter referred to as "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.

2. Defendants provide health insurance services nationwide. Anthem, Inc. is one of the largest health benefits companies in the United States.[1]

3. Plaintiff and similarly situated employees work as Consumer Service Associates ("Associates") at Defendants' call centers.

---

[1] See Defendant Anthem Inc's website: https://www.antheminc.com/AboutAnthemInc/index.htm (Last Accessed October 21, 2019).

4. Associates' job duties include placing and receiving inbound and outbound calls related to inquiries regarding medical, dental and vision policy benefits, verifying third party insurance eligibility for coordination of benefits, verifying prescription and medical authorizations requirements.

5. In order to perform their jobs, Defendants' Associates are required to boot up their computers and log into a server before the start of their scheduled shifts. This process has significant lags and takes approximately ten to twelve minutes per shift.

6. In or around Spring 2019, Defendants implemented a new Robotics software that was meant to speed up the log in process but only resulted in more lags and increased Associates' total pre-shift boot-up and log-in time.

7. The lags were so significant that Defendants offered Associates a five minute 'grace period,' allowing Associates to clock in up to five minutes past the start of their scheduled shift.

8. In order to perform their jobs, Defendants' Associates are required to close/shut down all their computer programs and systems after the end of their scheduled shifts.

9. Defendants' Associates also must perform a substantial amount of follow-up work, including documenting calls, reaching out to providers, escalating tasks, submitting discrepancies, placing follow-up calls, leaving voicemails, and closing cases, other tasks, which result in a long list of outstanding tasks that need to be completed prior to the start of the shift the following day.

10. Associates are instructed by Defendants' supervisors not to keep customers waiting, not to leave these tasks unfinished, and to "clear out their boards" before the start of their next shift.

11. Defendants' overtime policy does not allow Associates to clock-in early or remain

clocked-in past the end of their scheduled shifts unless that time has been offered to them and approved by management. This policy along with the substantial overflow of work that must be completed each day results in Associates regularly working off-the-clock pre-shift and post-shift to complete any outstanding tasks.

12. Associates are required to log out of their computers for their mid-shift unpaid lunch break and log back in at the end of the break. This mid-shift login/logout process, which Associates must perform off-the-clock, takes approximately 3 minutes in total.

13. Defendants have at all relevant times maintained, and continue to maintain, a common policy of failing to pay Associates for the time they spend performing the foregoing pre-shift, mid-shift, and post-shift activities, all of which directly benefit Defendants and are essential to their responsibilities as Associates.

14. Specifically, Defendants prohibit their Associates from clocking in prior to the start of their scheduled shifts and/or clocking out past the end of their scheduled shifts, unless that time has been offered to them and approved by management as overtime. Because Associates must boot up their computers and log into the server prior to the start of their scheduled shift, log out/shut down all their computer systems and programs at the end of their scheduled shift, and complete any outstanding tasks before the start of their scheduled shift the following day, Defendants' rule compels them to perform these activities *before* clocking into or *after* clocking out of Defendants' timekeeping system.

15. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Associates, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of

the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

16. Defendants knew or could have easily determined how long it took for its Associates to complete the pre-shift, mid-shift, and post-shift work and Defendants could have properly compensated Plaintiff and the Class for the work they performed, but did not.

17. Because Associates typically work at least 40 hours per week, Defendants' failure to pay them for pre-shift, mid-shift, and post-shift time violates the FLSA's overtime requirements, which mandates that employees be paid for each hour worked in excess of 40 in a workweek at a rate not less than 1.5 their regular rate of pay.

18. The named Plaintiff is a former Associate who worked for Defendants on an hourly basis in Defendants' Richmond, Virginia call center.

19. Plaintiff brings this FLSA action on behalf of herself and all other similarly situated hourly Associates of Defendants to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

20. Plaintiff brings this putative class action pursuant to the Fair Credit Reporting Act ("FCRA") against Defendants, who violated the FCRA's core protections by procuring background checks on employees and job applicants and taking adverse action on Plaintiff and

putative class members based on the procured consumer reports without providing pre-adverse action notice, copies of the reports, a written description of rights, and reasonable time to respond to Defendants or dispute the reports. Recognizing that peoples' jobs depend on the accuracy of consumer reports, Congress has chosen to regulate the procurement, use and content of such background checks through the FCRA. 15 U.S.C. § 1681.

21. Defendants have willfully and systematically violated 15 U.S.C. § 1681b(b)(3) by taking adverse action on Plaintiff and other putative class members based on the procured consumer reports without providing proper pre-adverse action notice, copies of the reports, a written description of rights, and reasonable time to respond to Defendants or dispute the reports.

22. Plaintiff seeks relief on behalf of the FCRA class in the form of statutory damages and/or actual damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

## JURISDICTION AND VENUE

23. This Court has subject-matter jurisdiction over Plaintiff's FLSA and FCRA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

24. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

25. Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' Associates engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

26. This Court may properly maintain personal jurisdiction over Defendants because

Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

27. This Court has personal jurisdiction over Defendants because Defendants do business within the state of Virginia and maintain systematic and continuous contacts with the State of Virginia, from which Plaintiff's claims arise.

28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

29. Plaintiff is a resident of Richmond, Virginia, and was employed by Defendants as an hourly Consumer Service Associate in Defendants' Richmond, Virginia call center location from about April 24, 2017 through September 13, 2019. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as **Exhibit 1.**

30. The Defendants are corporations incorporated and headquartered in Indiana.

31. Defendants have a registered agent of C T CORPORATION SYSTEM at 4701 Cox Rd Ste 285, Glen Allen, VA 23060.

## FLSA ALLEGATIONS

32. During Plaintiff's employment with Defendants, Plaintiff earned $19.92 per hour.

33. Throughout Plaintiff's employment with Defendants, Plaintiff and other Associates regularly worked off-the-clock.

34. In order to perform their jobs, Plaintiff and other Associates were required to boot up their computers and log into a server before the start of their scheduled shifts. This process took approximately ten to twelve minutes per shift.

35. In order to perform their jobs, Plaintiff and other Associates were required to

complete any outstanding tasks prior to the start of their scheduled shifts the following day. This process typically took approximately ten to fifteen minutes pre-shift and approximately thirty minutes to an hour post-shift.

36. Since Defendants prohibited Plaintiff and other Associates from clocking in prior to the start of their scheduled shifts and/or clocking out past the end of their scheduled shifts, Defendants' rule compelled them to perform these pre-shift and post-shift activities while off-the-clock.

37. During the course of the workday, Plaintiff and other Associates took an unpaid thirty minute lunch, during which they were required to log out of their computers and log back in but were not paid for such mid-shift login/logout time.

38. The time Plaintiff and other Associates spent booting up their computers, logging into the server, logging in and out of their computers, and performing outstanding tasks benefited Defendants and was essential to their responsibilities as Associates.

39. Because Plaintiff and other Associates typically worked at least 40 hours in a workweek, they were not paid for time spent working in excess of 40 hours in a workweek, in violation of the FLSA.

40. As a non-exempt employee, Plaintiff and other Associates were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

41. At all relevant times, Defendants were Plaintiff's "employer" and Defendants directed and directly benefited from the pre-shift, mid-shift, and post-shift work performed by Plaintiff and other Associates.

42. At all relevant times, Defendants controlled Plaintiff's and all other Associates' work schedule, duties, protocols, applications, assignments, and employment conditions.

43. Defendants knew or should have known that the time Plaintiff and other Associates spent in connection with the pre-shift start-up/log-in process as well as completing outstanding tasks, the mid-shift time spent on logging in and out of the computer during the unpaid lunch break, and the post-shift time spent completing outstanding tasks and closing/shutting down computer programs and systems is compensable under the FLSA.

44. At all relevant times, Defendants were able to track the amount of time that Plaintiff and other Associates spent in connection with the pre-shift, mid-shift, and post-shift activities; however, Defendants failed to document, track, or pay them for such work.

45. At all relevant times, Defendants' policies and practices deprived Plaintiff and other Associates of wages owed for the pre-shift, mid-shift, and post-shift activities Plaintiff and the other Associates performed. Because Plaintiff and the other Associates typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived Plaintiff and the other Associates of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

46. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly Consumer Service Associates who worked for Defendants in any of their call centers in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Collective").   Plaintiff reserves the right to amend this definition as necessary.

47. Excluded from the Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

48.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The Collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

49.     The employment relationships between Defendants and every Collective member are the same and differ only in name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift, mid-shift, and post-shift time owed to each employee – do not vary substantially from Collective member to Collective member.

50.     The key legal issues are also the same for every Collective member, to wit: uncompensated pre-shift, mid-shift, and post-shift time is compensable under the FLSA.

51.     Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include hundreds of members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## FCRA ALLEGATIONS RELATING TO PLAINTIFF COBB

52.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

53.     On or about August 7, 2019, Defendants procured Plaintiff's consumer report from HireRight.

54.     The consumer report HireRight furnished to Defendants allegedly bore on Plaintiff's character and general reputation.

55.     Based on the information contained in the consumer report obtained from

HireRight, Defendants determined that Plaintiff was ineligible to continue working for Defendants.

56. On or about August 15, 2019 Defendants placed Plaintiff on administrative leave but did not disclose the reason behind this action.

57. On or about September 13, 2019, Defendants informed Plaintiff that she was being terminated.

58. Defendants did not give Plaintiff any opportunity to respond to or dispute the contents of the report and ignored Plaintiff's e-mails following her termination.

59. Defendants did not provide Plaintiff with a reasonable opportunity to respond to or dispute the results of the background report before taking adverse action against her.

60. Defendants did not provide Plaintiff with a written description of her rights under the FCRA before taking adverse action against her.

61. Defendants did not provide Plaintiff with a copy of the background report they procured before taking adverse action against her.

62. Defendants failed to provide Plaintiff proper adverse action notice with adequate disclosures regarding the outside consumer reporting agency that provided the background report and Plaintiff's rights to free disclosure of the report and to dispute the accuracy of the information contained in the report.

63. Defendant willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by taking adverse action—i.e. determining that Plaintiff was ineligible to continue working for Defendants—based on the consumer report without providing Plaintiff with a written description of her rights under the FCRA, a copy of the background report, and/or reasonable opportunity to respond to or dispute the results of the background report before taking adverse action against her. (Adverse Action Claim).

## FCRA CLASS ALLEGATIONS

64. Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

65. Plaintiff asserts the Adverse Action Claim on behalf of the class defined as follows:

*Any person on whom Defendants have taken adverse employment action based in whole or in part on any information contained in a consumer report in the period beginning 2 years prior to the filing of this Complaint and continuing through the date the class list is prepared.*

66. Defendants conduct background checks on their job applicants.

67. Defendants do not perform these background checks in-house. Rather, Defendants rely on outside consumer reporting agencies to obtain this information and report it to Defendants.

68. These reports constitute "consumer reports" for purposes of the FCRA.

69. Defendants use HireRight as a consumer reporting agency.

70. Defendants procured consumer reports for employment purposes from HireRight and took adverse action on these individuals based on these consumer reports without providing written description of rights under the FCRA, copies of background report, and/or reasonable time to respond or dispute consumer reports before taking adverse action.

71. Defendants' willful conduct is reflected by, inter alia, the following:

72. Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

73. Defendants knew or had reason to know from their communications with HireRight that their conduct violated the FCRA;

74. Upon information and belief, Defendants certified to HireRight that they would comply with the disclosure requirements of the FCRA;

75. Despite the explicit statutory text and depth of guidance, Defendants systematically

failed to provide written description of rights under the FCRA, copies of background reports, and/or reasonable time to respond or dispute consumer reports before taking adverse action; and

76. By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

77. Numerosity: The class is so numerous that joinder of all class members is impracticable. Defendants regularly fail to provide written description of rights under the FCRA, copies of background reports, and/or reasonable time to respond or dispute consumer reports before taking adverse action. Thousands of employees of Defendants and/or companies for which Defendants provide support services satisfy the class definition.

78. Typicality: Plaintiff's claims are typical of the members of the class. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendants treated Plaintiff consistent with other class members in accordance with their standard practices.

79. Adequacy: Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

80. Commonality: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class, including but not limited to:

> a. Whether Defendants procured consumer reports on prospective and existing employees;
>
> b. Whether Defendants violated the FCRA by taking adverse action without providing a written description of rights under the FCRA, copies of background reports, and/or reasonable time to respond or

    dispute consumer reports before taking adverse action;

   c. Whether Defendants' FCRA violations were willful;

   d. The proper measure of statutory damages; and

   e. The proper measure of punitive damages.

81. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification will also preclude the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

82. Plaintiff intends to send notice to all members of the class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the class members are available from Defendants' records.

**COUNT I**
**(Brought Individually and on a Collective Basis Pursuant to 29 U.S.C. § 216(b))**
<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**</u>
<u>**29 U.S.C. § 201,** *et seq*.</u>

83. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

84. At all times relevant to this action, Defendants were an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

85. Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

86. At all times relevant to this action, Plaintiff and other Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

87. Plaintiff and other Collective members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

88. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

89. At all times relevant to this action, Defendants required Plaintiff and other Collective members to perform pre-shift, mid-shift, and post-shift work as described herein, but failed to pay these employees the federally mandated minimum wage or overtime compensation for such time.

90. The uncompensated pre-shift, mid-shift, and post-shift work performed by Plaintiff and other Collective members was an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

91. In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre-shift, mid-shift, and post-shift time should have been paid them at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

92. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for its Associates to complete the pre-shift, mid-shift, and post-shift activities and Defendants could have properly compensated Plaintiff and the

Collective for such time, but did not.

93.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Brought Individually and as a Rule 23 Class)**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**
**Taking Adverse Action without Complying with 15 U.S.C. § 1681b(b)(3)**

94.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

95.     Pursuant to 15 U.S.C. § 1681b(b)(3), an employer must satisfy these conditions before taking adverse action based on a consumer report:

96.     (A) In general

Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates— (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

97.     Congress has clarified that the "employer must [] provide the consumer with a reasonable period to respond to any information in the report that the consumer disputes[,] and with written notice and the opportunity and time period to respond."

98.     Further, a "reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report

from the employer." H.R. REP. 103-486 at 40. While four days may not be "reasonable," eight days has been deemed a "reasonable period."

99. Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without first sending them pre-adverse action notices, which deprived Plaintiff and other class members of an opportunity to review and address any issues in their reports.

100. Defendants failed to provide Plaintiff and other class members a copy of the procured background reports before they took the adverse action against Plaintiff and other class members.

101. Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without first providing Plaintiff and other class members with a written description of their rights under the FCRA.

102. Defendants took adverse action against Plaintiff and other class members based on information in their consumer reports without giving them sufficient time after providing notice, a copy of the report, and a written summary of their rights to allow them to discuss the report with Defendants or otherwise respond before the adverse action was taken.

103. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(3)(A)(ii).

104. By taking adverse action against Plaintiff without first providing her with a pre-adverse action notice, a copy of the background report, a written description of her FCRA rights, and reasonable time to respond or dispute the report's findings before the adverse action was taken, Defendants caused her to sustain actual damages, i.e. loss of opportunity to respond to and/or

dispute the information in her consumer report and loss of employment and income.

105. Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

106. Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

107. Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Shelita Cobb, requests the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b. Determining that this FCRA action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure (Count II);

    c. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

    d. Designating Plaintiff as the representative of the FLSA collective Class and FCRA Class in this action and undersigned counsel as Class counsel for the same;

    e. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

    f. Declaring Defendants' violation of the FLSA was willful;

    g. Declaring that Defendants violated the FCRA;

    h. Declaring that Defendants' violation of the FCRA was willful;

  i. Granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the collective action Class and FCRA Class the full amount of damages and liquidated damages available by law;

  j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by the FLSA;

  k. Approving an incentive award to Plaintiff for serving as the representative of the FLSA collective Class and FCRA Class in this action;

  l. Awarding pre- and post-judgment interest to Plaintiff on these damages;

  m. Awarding actual, statutory and/or punitive damages as provided by the FCRA;

  n. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

  o. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Shelita Cobb, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

                RESPECTFULLY SUBMITTED,

Dated: November 6, 2019      By: /s Curtis Cannon

                                                          _____

                                                          Curtis Daniel Cannon, Esq.
GOLDBERG & FINNEGAN, LLC
8401 Colesville Road
Suite 630
Silver Spring, Maryland 20910
(p)301-589-2999
(f)301-589-2644

*Local Counsel for Plaintiff*

Jason T. Brown*
Nicholas Conlon*
Lotus Cannon*
BROWN, LLC
111 Town Square Pl Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com
*to be admitted Pro Hac Vice

*Lead Counsel for Plaintiff*

19