UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELITA COBB, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:20-cv-00820-SEB-DLP |
| | ) |
| ANTHEM INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER APPROVING PARTIES' JOINT MOTION FOR FINAL CERTIFICATION OF CONDITIONALLY CERTIFIED COLLECTIVE ACTION AND JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Now before the Court is the parties' Joint Motion for Final Certification of the Conditionally Certified Collective Action as well as their Joint Motion for Approval of the parties' settlement of this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203 *et seq.* Dkt. 129; Dkt. 130. For the reasons explicated below, both motions are GRANTED.

The Court enters a final certification of the FLSA collective action and approves the Settlement Agreement [Dkt. 130-1] and its terms as fair, reasonable, and sufficient. The Second Amended Complaint is dismissed with prejudice and in full and final discharge of any and all of Plaintiffs' released claims, but with the Court retaining jurisdiction to enforce the terms of the settlement. The Court further approves the requested attorneys' fee award to Plaintiffs' counsel and directs that the gross settlement amount be distributed in accordance with the terms of the Settlement Agreement. *See* dkt. 130-1.

## Background

On December 4, 2019, Plaintiff Shelita Cobb brought this action on behalf of herself and others similarly situated, whom we collectively refer to as "Plaintiffs" unless context requires otherwise. Plaintiffs are current and former employees of call centers operated by Defendant, Anthem, Inc., in Indiana, Kentucky, Pennsylvania, and Virginia. The second amended complaint alleges that Defendant Anthem, Inc. violated the FLSA by failing to pay Plaintiffs for all hours worked in excess of forty hours per week. Plaintiffs assert that Defendant's common policy required Plaintiffs to perform uncompensated pre-shift, mid-shift, and post-shift work in violation of the minimum wage or overtime compensation requirements established by the FLSA. In addition, Plaintiffs assert state law claims under the laws of Indiana,[1] Kentucky,[2] and Pennsylvania.[3]

On March 8, 2021, we received notice that a settlement had been reached among the parties in this matter. They have now jointly moved for final certification of the conditionally certified collective and for approval of their Collective Action Settlement Agreement (the "Settlement Agreement").

## Analysis

---

[1] Janie Wiggington brings her claims for herself and on behalf of all other similarly situated Rule 23 class members under Indiana Code § 22-2-5-1. Second Am. Compl. ¶ 4.

[2] Terri Burton brings her claims for herself and on behalf of all other similarly situated Rule 23 class members under the laws of Kentucky, KRS §§ 337.285 and 337.020. *Id.* ¶ 3.

[3] Joseph Beasley brings his claims for himself and on behalf of all other similarly situated Rule 23 class members under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.* and attendant regulations, 34 Pa. Code § 231.1 *et seq.* as well as the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq. Id.* ¶ 2.

## I. Final Certification of the Collective Class is Appropriate

On July 27, 2020, our court conditionally certified this action as a collective action under the FLSA, 29 U.S.C. § 216(b). [Dkt. 99]. The conditionally certified collective class has been defined as follows:

a. **The Indiana Collective:** all current and former full-time, hourly-paid associates who held the job title of Utilization Management Representative I while working at Anthem's Central National Local & GA call center located at 220 Virginia Ave in Indianapolis, Indiana, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020 or who held the job title of Customer Care Representative I or Customer Care Representative II at Anthem's AHG/MHA-NASCO call center located at 220 Virginia Ave in Indianapolis, Indiana, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020.

b. **The Kentucky Collective:** all current and former full-time, hourly-paid associates who held the job title of Customer Care Representative I or Customer Care Representative II while working at Anthem's KEHP/Member call center located at 13550 Triton Park, Louisville, Kentucky, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020.

c. **The Pennsylvania Collective:** all current and former full-time, hourly-paid associates who held the job title of SCA Customer Care Representative I, SCA Customer Care Representative II, or SCA Customer Care Representative II – Multi while working at Anthem's SCA call center located at 2400 Thea Drive, Harrisburg, Pennsylvania, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020.

d. **The Virginia Collective:** all current and former full-time, hourly-paid associates who held the job title of Consumer Service Associate, Customer Care Representative I or Customer Care Representative II while working at Anthem's VA ACA and Legacy Call Center and/or Enterprise Individual ACA Call Center located at 2015 Staples Mill Rd in Richmond, Virginia, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020.

Dkt. 99 at 4–5.

Notice was sent by the Named Plaintiffs to eligible members of the certified collective, giving them an opportunity to opt-in to this lawsuit. We are informed that, to date, thirty-one individuals, including the Named Plaintiffs, have opted in.

"Where the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (internal quotations, citation omitted) (collecting cases). As explained in our July 27, 2020 Order Granting Joint Motion to Approve Stipulation Conditionally Certifying Collective Action, Plaintiffs have succeeded in showing that the proposed collective members are similarly situated based on evidence that the Plaintiffs performed substantially similar duties on behalf of Defendant and that they were all subject to the same allegedly unlawful common employment policy requiring call center employees to perform uncompensated pre-shift, mid-shift, and post-shift activities. Dkt. 99 at 6–7. The parties now stipulate that all opt-in Plaintiffs are similarly situated under 29 U.S.C. § 216(b). Dkt. 129 at 2. Accordingly, final certification of the collective action is appropriate at this time. *See Clemens v. Stericycle*, No. 1:15-cv-01432, 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016) (Dinsmore, J.), *report and recommendation adopted*, 2016 WL 1045550, at *1 (S.D. Ind. Mar. 15, 2016) (Barker, J.) (holding that collective action plaintiff must show that collective members were "victims of a common policy or plan"); *Burkholder*, 750 F. Supp. 2d at 994 (concluding that final certification is appropriate where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies," and the defendants' "defenses would

apply to *all* Plaintiffs"). Thus, we hereby enter a final certification of the following four collectives described as follows:

1. **The Indiana Collective:** all current and former full-time, hourly-paid associates who held the job title of Utilization Management Representative I while working at Anthem's Central National Local & GA call center located at 220 Virginia Ave in Indianapolis, Indiana, at any time within the period of three years prior to the date on which this Stipulation is approved to March 18, 2020 or who held the job title of Customer Care Representative I or Customer Care Representative II at Anthem's AHG/MHA-NASCO call center located at 220 Virginia Ave in Indianapolis, Indiana, at any time from July 27, 2017 to March 18, 2020.

2. **The Kentucky Collective:** all current and former full-time, hourly-paid associates who held the job title of Customer Care Representative I or Customer Care Representative II while working at Anthem's KEHP/Member call center located at 13550 Triton Park, Louisville, Kentucky, at any time from July 17, 2017 to March 18, 2020.

3. **The Pennsylvania Collective:** all current and former full-time, hourly-paid associates who held the job title of SCA Customer Care Representative I, SCA Customer Care Representative II, or SCA Customer Care Representative II – Multi while working at Anthem's SCA call center located at 2400 Thea Drive, Harrisburg, Pennsylvania, at any time from July 17, 2017 to March 18, 2020.

4. **The Virginia Collective:** all current and former full-time, hourly-paid associates who held the job title of Consumer Service Associate, Customer Care Representative I or Customer Care Representative II while working at Anthem's VA ACA and Legacy Call Center and/or Enterprise Individual ACA Call Center located at 2015 Staples Mill Rd in Richmond, Virginia, at any time from July 17, 2017 to March 18, 2020.

    **II.**    **The Settlement Agreement is Fair and Reasonable**

FLSA collective action settlement agreements require judicial approval. "A one-step settlement approval process is appropriate." *Knox v. Jones Grp.*, No. 15-cv-1738, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (collecting cases). "In other words, the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23 of the Federal

Rules of Civil Procedure." *Heuberger v. Smith*, No. 3:16-cv-386, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019). "This is due to the fundamental differences between 'opt-in' collective actions and 'opt-out' class actions governed by Rule 23[.]" *Id.*

"Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (*quoting Burkholder*, 750 F. Supp. 2d at 995); *Sanders v. Connan's Paint & Body Shop, LLC*, No. 1:14-cv-01725, 2015 WL 5692542, at *4 (S.D. Ind. Sept. 28, 2015). Courts are required to determine the fairness of a collective action settlement agreement by assessing "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder*, 750 F. Supp. 2d at 995 (quoting *Misiewicz v. D'Onofrio Gen. Contractors,* No. 08 CV 4377, 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010)) (internal quotation marks omitted).

### A. Terms of the Settlement Agreement

The Settlement Agreement's gross settlement amount includes incentive awards to the Named Plaintiffs, settlement allocations to Plaintiffs, attorneys' fees, and reimbursement of Plaintiffs' counsel's litigation costs and expenses. The Plaintiffs will receive settlement payments based on an allocation formula that takes into account the number of weeks each person worked and each person's pay rates during the relevant

time period for which they were not paid overtime premium earnings for any hours they worked in excess of forty during those weeks.

Pursuant to the Settlement Agreement, Defendant agrees to pay the gross settlement amount of Ninety-Four Thousand Dollars ($94,000.00) as follows:

a. Named Plaintiff Shelita Cobb shall receive an incentive award of One Thousand Dollars ($1,000.00) for which an IRS Form 1099 shall be issued.

b. Named Plaintiff Terri Burton shall receive an incentive award of Seven Hundred and Fifty Dollars ($750.00) for which an IRS Form 1099 shall be issued.

c. Named Plaintiff Janie Wiggington shall receive an incentive award of Seven Hundred and Fifty Dollars ($750.00) for which an IRS Form 1099 shall be issued.

d. Named Plaintiff Joseph Beasley shall receive an incentive award of One Hundred Dollars ($100.00) for which an IRS Form 1099 shall be issued.

e. Plaintiffs' counsel will receive attorneys' fees in the amount of Forty-Seven Thousand, Seven Hundred and Eighty-Five Dollars ($47,785.00) or such other amount approved by the Court. The attorneys' fees will be subject to Court approval. Anthem will not oppose Plaintiffs' Counsel's application to the Court for approval of attorneys' fees in the amount set forth. Anthem will issue Plaintiffs' Counsel an IRS Form 1099 for the attorneys' fees approved by the Court and paid by Anthem. If the Court does not approve any portion of the attorneys' fees, such funds that are not approved will remain with or revert to Anthem.

f. Plaintiffs' counsel will receive reimbursement of litigation costs and expenses in the amount of Thirteen Thousand, Seven Hundred and Fifteen Dollars ($13,715.00) or such other amount approved by the Court. This reimbursement will constitute full satisfaction of all of Plaintiffs' Counsel's litigation costs and expenses. This reimbursement of litigation costs and expenses will be subject to Court approval. Anthem will not oppose Plaintiffs' Counsel's application to the Court for approval of litigation costs and expenses in the amount set forth. Anthem will issue Plaintiffs' Counsel an IRS Form 1099 for the litigation costs and expenses approved by the Court and paid by Anthem. If the Court does not approve any portion of the litigation costs and expenses, such funds that are not approved will remain with or revert to Anthem.

g. The portion of the Settlement Amount to be allocated to Plaintiffs collectively is $29,900.00 (the "Allocation Fund"). The settlement allocations to each individual

Plaintiff from the Allocation Fund are outlined in Exhibit A attached to the Settlement Agreement. Each individual settlement allocation made to an individual Plaintiff will be comprised of one amount designed to compensate that Plaintiff for alleged pay owed less the Plaintiff's share of required taxes and withholdings (which Anthem will properly remit to the taxing authorities) and another amount designed to compensate that Plaintiff for liquidated damages allegedly owed on that pay (with no withholdings). Anthem will issue each individual Plaintiff (i) an IRS form W-2 for the amount paid to compensate for alleged pay owed and (ii) an IRS Form 1099 for the liquidated damages allegedly owed. Each Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments he or she receives or obtains pursuant to this Agreement. Each Plaintiff shall be responsible for (a) any taxes owed on the payments they receive pursuant to this Agreement beyond the amount Anthem withholds from the amount designed to compensate Plaintiffs for alleged pay owed and (b) any taxes determined to be owed by Plaintiffs on Anthem's payment of the portion of the Settlement Amount to Plaintiffs' Counsel as attorneys' fees or reimbursement of litigation costs and expenses. Nothing in this Agreement shall be construed as Anthem or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Plaintiff's participation in any portion of this Agreement.

Defendant's counsel will mail all settlement payments to each Plaintiff via a non-USPS courier with a tracking number no later than twenty-one (21) calendar days following dismissal of this suit with prejudice. The checks shall be delivered to Plaintiffs with a cover letter that summarizes the terms of the settlement and the basis on which the settlement payments were determined. If any payment is not successfully delivered or returned undeliverable, Defendant shall issue and mail replacement checks after the originally issued checks have expired, if requested by Plaintiffs' counsel. If any Plaintiff does not cash his or her settlement check within one hundred twenty (120) days after the check issuance date, the check will be void.

No later than five (5) business days after the dismissal of the suit with prejudice, Plaintiffs' counsel will provide Defendant with an IRS W-9 form for their firm.

8

Defendant shall issue a check to Plaintiffs' counsel for any attorneys' fees and litigation costs and expenses approved by the Court no later than twenty-one (21) calendar days after the dismissal of the suit and shall send that check to Plaintiffs' counsel via a non-USPS overnight delivery service.

In exchange for the consideration set forth in the Settlement Agreement, Plaintiffs agree to fully release Defendant from any and all causes of action based on putative violations of federal or state law pertaining to hours of work or payment of wages that were asserted or could have been asserted in this suit under the FLSA or claims alleged to have occurred from the beginning of time until dismissal of the suit by the court. The Settlement Agreement contains a number of additional terms, including but not limited to a "No Publicity" provision that states that Plaintiffs agree not to actively publicize, or promote to the media, the Settlement Agreement or its terms with anyone other than the Court or those individuals necessary to effectuate the terms of the Agreement without receiving advance written consent of Defendant. However, Defendant, Plaintiff, and Plaintiffs' Counsel have the right to disclose the Settlement Agreement as may be required under federal or state law and may disclose a summary of the terms of this Agreement in legal proceedings. Further, the parties have the right to disclose the settlement to their tax and legal advisors and spouses.[4]

### A. Discussion

---

[4] Defendant and the Named Plaintiffs further agree and acknowledge that nothing herein shall prevent Plaintiffs' Counsel from referring or citing to this lawsuit and the pleadings and other papers filed in obtaining approval of this settlement in any court filings and proceedings in other cases for the purposes of demonstrating their experience and adequacy as class counsel.

This agreement was reached after the parties, with the assistance of counsel, fully discussed issues related to class certification, participated in discovery, and engaged in extensive and detailed discussions regarding claims and alleged damages. The parties maintain that the agreement is based upon a full understanding of each party's respective position as well as the risks and benefits to concluding the action versus continuing the action. In such circumstances, district courts typically have no trouble concluding that a settlement agreement was the result of "contentious arms-length negotiations." *Heuberger*, 2019 WL 3030312, at *3; *McAfee v. Hubbard*, No. 14-CV-1010, 2017 WL 1479304, at *3 (S.D. Ill. Apr. 25, 2017); *Sanders*, 2015 WL 5692542, at *4. Additionally, the parties agree that a trial on the merits would involve a great deal of uncertainty as results in FLSA cases are wide-ranging and continued litigation could therefore be lengthy and expensive. In light of those risks, agreeing to a settlement "is not indicative of overreaching by the employer or waiver of rights by the employees, but of a reasoned and counseled decision by both sides." *Heuberger*, 2019 WL 3030312, at *3.

The specific payments to each of the four Named Plaintiffs are approved. As stated by the Seventh Circuit, "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). The court, in deciding whether an incentive award is appropriate, considers factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* These Named Plaintiffs, we

10

are informed, have cooperated and assisted Plaintiffs' counsel in prosecuting this matter and have assumed reputational and employment risks by bringing this lawsuit in their own names. The Named Plaintiffs have remained in regular contact with Plaintiffs' counsel throughout this litigation, which has now been pending for over two years, and have provided detailed information about their claims. Shelita Cobb, as the original Named Plaintiff, has been allocated the largest award as she has played the central role in this litigation from the beginning and participated in the settlement conference. These contributions justify the requested payments and are reasonable, both in terms of the amounts to be made to each Named Plaintiff and the percentage (2.8%) they cumulatively represent of the total recovery amount. *See Gallant v. Arrow Consultation Servs., Inc.*, No. 1:19-cv-00925, 2020 WL 2113399, at *4 (S.D. Ind. May 4, 2020); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016).

As to the amount of attorneys' fees awarded under the Agreement, "[p]roportionality is the comparison between a plaintiff's damages and attorneys' fees." *Dominguez v. Quigley's Irish Pub., Inc.*, 897 F. Supp. 2d 674, 686 (N.D. Ill. 2012) (citing *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009)). "There is no strict rule of proportionality, and the Seventh Circuit has repeatedly rejected the notion that the fees must be calculated proportionally to damages." *Id.* (quoting *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009); *Anderson*, 578 F.3d at 544–45) (internal quotation marks omitted)). However, "[a] request for fees that is a

large multiple of the amount awarded should cause the court to pause and reflect on the fee requested." *Id.* (citing *Anderson*, 578 F.3d at 546).

Plaintiffs' counsel requests $47,785.00 in attorneys' fees, amounting to 50.8% of Plaintiffs' total settlement amount, as well as reimbursement of $13,715.00 in litigation costs and expenses. The parties' dispute has been ongoing for over two years and Plaintiffs' counsel asserts that they have logged 460 hours litigating this matter and incurred $14,399.70 in litigation costs. Dkt. 130-2 at 1. The documented hours include, among other things, moving for conditional certification, arranging for the dissemination of Court-approved notice to putative collective members, reviewing voluminous time and pay records, constructing damages models, participating in a video settlement conference as well as several telephonic hearings, and conducting numerous intakes of collective members regarding their individual work experiences as associates. The expenditure of time on this litigation precluded Plaintiffs' counsel from representing other clients and had the potential to go entirely uncompensated, as Plaintiffs' counsel represented the Plaintiffs on a contingent-fee basis.

The award of attorneys' fees must reflect "the market price for legal services, in light of the risk of nonpayment, and the normal rate of compensation in the market at the time." *Campbell*, 2012 WL 1424417, at *2. Here, the lodestar calculation shows that Plaintiffs' counsel's hours multiplied by the rates that are reasonable within the Indianapolis, Indiana metropolitan area equate to $127,565. Plaintiffs' counsel maintains that they have refrained from arguing for the higher lodestar calculation rate because the

12

rates they have set forth support the reasonableness of the settlement, which will provide Plaintiffs with an average payment of approximately $964.52.

While the Plaintiffs' requested attorneys' fee award reflects a large percentage of the total settlement amount, they are modest in light of the time and expense that Plaintiffs' counsel has spent on this case. *See, e.g.*, *Bligh v. Constr. Res. of Indiana, Inc.*, No. 1:15-cv-00234, 2016 WL 5724893, at *3 (N.D. Ind. Aug. 10, 2016), *report and recommendation adopted*, No. 1:15-cv-234, 2016 WL 5745590 (N.D. Ind. Oct. 3, 2016) (approving attorneys' fees amounting to sixty percent of the settlement amount); *Paredes v. Monsanto Co.*, No. 4:15-cv-088, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016) (approving $6,000 in attorneys' fees payable to Plaintiffs' counsel even though it exceeded plaintiffs' total recovery of $3,500). The Court concludes that the proposed attorneys' fee award plus $13,715.00 costs is reasonable under these circumstances and approves it as such.

The Settlement Notice attached as Exhibit B to the Settlement Agreement is likewise approved. Dkt. 130-1 at 13. The Settlement Notice sufficiently informs Plaintiffs of the terms of the settlement, including the allocation formula, the amount to which they are entitled, the scope of the release, and the other covenants and promises stated in the Settlement Agreement. *Gallant*, 2020 WL 2113399, at *3; *Koszyk*, 2016 WL 5109196, at *2. The proposed notice sufficiently informs Plaintiffs of the details of the settlement and their rights under it and, accordingly, warrants our approval.

After reviewing the Joint Motion and attached Settlement Agreement, the Court concludes that the Settlement Agreement is fair and reasonable. The parties have litigated

13

this case extensively for more than two years. Trial in this action would likely be complex, time-consuming, and expensive for both sides. The outcome of a trial on the merits is uncertain and the Settlement Agreement acceptably balances the risks of a potential trial in a way that is both fair and reasonable.

## CONCLUSIONS

1. For settlement purposes only, the Court finds that final certification of the collective action is appropriate under Section 216(b) of the Fair Labor Standards Act and the Joint Motion for Final Certification of the Conditionally Certified Collective Action [Dkt. 129] is GRANTED.

2. The Court finds that the proposed Settlement Agreement [Dkt. 130-1] is fair, reasonable, adequate and just. It is therefore APPROVED and the Joint Motion for Approval of the Settlement Agreement [Dkt. 130] is GRANTED.

3. Plaintiffs' proposed Notices of Settlement, and the plan for their distribution, are each approved.

4. The payments to the named individual plaintiffs in the specific amounts are approved and the Court directs that the settlement allocations be distributed in accordance with the terms of the Settlement Agreement. Dkt. 130-1.

5. Plaintiffs' request for payment of attorneys' fees and litigation costs and expenses in the amount specified is granted and the Court directs that the settlement allocations be distributed in accordance with the terms of the Settlement Agreement. Dkt. 130-1.

6. The Complaint is <u>DISMISSED WITH PREJUDICE</u> and in full and final discharge of any and all of Plaintiffs' released claims, but with the Court retaining jurisdiction to enforce the terms of the Settlement Agreement.

IT IS SO ORDERED.

Date:    1/31/2022    *[signature: Sarah Evans Barker]*

                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

Jason Travis Brown
Brown, LLC
jtb@jtblawgroup.com

Jason T. Brown
BROWN, LLC
jtb@jtblawgroup.com

Nicholas Conlon
BROWN, LLC
nicholasconlon@jtblawgroup.com

Ashley Zeiler Hager
TROUTMAN PEPPER HAMILTON SANDERS LLP
ashley.hager@troutman.com

Andrew Henson
TROUTMAN PEPPER HAMILTON SANDERS LLP
andrew.henson@troutman.com

Robert Adam Hicks
MACEY SWANSON LLP
rhicks@maceylaw.com

Kandi Kilkelly Hidde
FROST BROWN TODD LLC (Indianapolis)
khidde@fbtlaw.com

Amy Suzanne Wilson
FROST BROWN TODD LLC (Indianapolis)
awilson@fbtlaw.com